Okay, the next argued case is number 15-1292 New Yorker S.H.K. Jeans GmbH v. Rajca, Mr. Dranghill. Thank you, Your Honors. May it please the Court. It is our contention that the Board has abused its discretion in denying Appellant's motion to amend the pleadings to add a counterclaim based on abandonment. This case started rather quickly with discovery on both sides issued, and then there were an initial round of documents that were turned over, about 30 or so documents, and we initially complained about the document production because it did not show sufficient use of trademark by Appelli. So we engaged in communications with counsel, and they indicated that over time they may supplement their production. What happened was they agreed to turn over additional documents, and they did. And on that same day that they turned over additional documents, they sort of blindsided us with a motion for summary judgment at that point. Well, put aside whether they had the right to file a motion for summary judgment at the time, because I'm trying to understand what you seem to think are the primary differences between what was produced in the last cancellation proceeding and what had been produced all the way back in 2000. Okay. Well, what was produced in 2000, and again, I was not a part of that case, but what we can understand and what was before the Board were a few invoices, a statement that essentially showed a T-shirt that may or may not have had trademark use on it. And based on that, that was from 1996 evidence of use. Our feeling is that at any, you can move for abandonment at any time, and if you have three years of non-use, then there's a presumption of abandonment. We have any period of time between 2000 and the year 2013 to show abandonment, and what we were not given was any evidence of use, consistent, continuous use during that entire period from 2000 to 2013. But this entire period from 2000 to 2013, there are, what, two or three rounds of efforts to negotiate the purchase of the mark, and I assume there was an exchange of information in connection with those rounds of negotiations, right? Those rounds of negotiations are not of record in this case. They are completely, there's been no discussion about that below. There was never any testimony about it, there's no depositions, there's no discussion about, that was just brought up in these pleadings for the first time. I don't know what was discussed during those informal communications between the clients. We have no understanding of what happened during those meetings, and I just, I don't see the relevance of that at all. We had responses to interrogatories that essentially said, yeah, we used it, and we had, you know, just general annual sales of blank. We went back and requested, okay, well, we need a breakdown, because we're entitled to understand, is there a three-year period of time where you didn't use the trademark? We requested, obviously, right after summary judgment motion came in, that we needed additional discovery, and we couldn't defend ourselves properly without this information. The board below denied that request for additional discovery. And again, it was always clear that this was one of the issues we were, that was very important for us to address. We needed to understand if they were using the mark. And again, documents from 1996, documents from 2000, are just not relevant. The board indicated that they were the same types of documents, they were the same types of documents. But those documents themselves do not show either use or non-use. They needed factual support to back it up. So your claim of abandonment only relates to the post-2000 period? Yes. We believe that between the period of 2000 and 2013, there was likely a three-year period where the mark was abandoned. You did not argue that there was a period of abandonment that predated 2000? We did not, no. We are not concerned with the pre-2000 period. We are concerned with the 2000 to 2013 period. We understand that that case is, you know, the 2000 case is over. But you can always, you always have a right to bring a claim for abandonment, regardless of if the trademark is incontestable or not, and you know, we had the right to get that information. And what is it that was presented in 2013 that you think shows abandonment? Well, that's the issue. We don't think anything necessarily was turned over that shows abandonment. What we think is that they failed to produce enough evidence to show that they were actually using the mark. So what we did was we waited. Why couldn't you bring your claim based on their first shot, what they turned over, and you said that doesn't show use. Therefore, abandonment, therefore, we file our counterclaim. What we actually did, the board decided that we failed to bring the counterclaim on time specifically because we did not bring it with... At an earlier point. What precluded you from bringing the abandonment claim earlier? Earlier than... After the answer? Earlier than when you're filing your motion to amend. You never file it. It's not in there. Right, so we... You filed one in 2000 and you lost that case, but I mean, the... Oh, well, we only brought... The only reason we bring an abandonment claim is because they moved to cancel our registration. I understand that. Yeah. And the whole question in this case is whether or not you sought to bring that abandonment counterclaim early enough in the proceedings. Right. And the only thing that the board analyzed was, and decided, was that you should have brought it with your answer. We believed that we couldn't... We didn't have enough evidence to do that. So what we did was we engaged in discovery. And as soon as the discovery period was technically over, we made the motion to amend it. Why didn't you have enough evidence at the time you filed your answer? Because we had no evidence. There was none available to us. We did not have any prior information under use. We didn't do any investigation. The case just started. So we initiated and made requests for discovery, and we did it again at the time of summary judgment motion. And we continued to ask for these types of documents, which were needed to support grounds for an abandonment claim. All right. In 2013, though, you... To go back to where you and I were discussing before, you didn't just bring an abandonment claim. You also tried to bring a claim predicated on the original application and what was shown as it relates to use relating to the original application. Would you concede that as to that claim, the board's refusal to allow you to amend was justified given the fact that you had plenty of documents before 2000 to have made that claim? Yes. We have not appealed that decision. The void of an SEO claim, we have not appealed. Okay. So you're only arguing that abandonment post-2000... Correct. ...that the board should have allowed you to assert that claim and, frankly, should have allowed you to conduct further discovery as to that claim. Correct. And basically, it was an abuse of discretion because the board did not have substantial evidence to decide the way they did. All they had was an application from 1996 that showed alleged use. There was a cancellation action in 2000 that we don't know what documents were turned over during that time. And based on that, they decided that we had no right to bring an abandonment claim. So to the extent that the board felt that the information that you received in 2013 was of the same character or nature as the information that you had before, again, you would concede that you couldn't seek an abandonment claim as to that earlier timeframe, but you believe that that should not have... that should not stop you from seeking abandonment claims? No, because you can bring, again, any three-year period can cover an abandonment claim. But to the extent that the information produced later was essentially the same as earlier, you know, if you thought you had an abandonment claim pre-2000, why didn't you just assume that if they had already abandoned it pre-2000, the likelihood that they didn't do anything more in a later period of time was high and just assert your claim? The claim in 2000 was more focused on the void ab initio claim, whether there was actual trademark use at all, as opposed to an abandonment claim. So this was a different issue that was, you know, brought to light during the course of our investigations, you know, post-filing in 2013. So the claim is different, and again, as you can see, we were blindsided with the summary judgment motion. And as you'll see, the appellee produced a two-page document of support for their use initially with the summary judgment motion. After, and we asked time and again, show us evidence of use, show us annual sales, show us how the mark is appearing from year to year on the good, they're in connection with the sale of the goods. We were never turned over this material. And shockingly, at the end of full briefing on our motion for leave to an amend, they turned over a six-page declaration by appellee that pointed out year by year, this is how it was used, this is our annual sales, so on and so forth. We had no right to challenge any of that. There's never been depositions in this case. We just haven't had the opportunity to challenge it. Okay. We'll save you a little time, Mr. Drenher. Thank you, Your Honor. Ms. Patch. Thank you. May it please the Court. There is substantial evidence of the record to show that Mr. Reza has continuously used his mark in connection with clothing items for nearly 20 years, and that New Yorker has known of Mr. Reza's use since at least 2000. The issue here isn't whether or not Mr. Reza has abandoned his mark at any point in time, which we submit he has not, but rather it's New Yorkers' dilatory actions that appear to try to accomplish, through undue delay and increased expense, what they cannot accomplish on the merits of the matter, and that is... But wait. First of all, we don't want to have a situation where we encourage people to make claims that they don't have a good safe basis to make, right? Yes. All right. And it's true that it doesn't matter what they knew before 2000. There could have been abandonment as of 2010, right? There could have been, but not in this case. But you're talking about the merits of an abandonment claim. What we're looking at here is whether or not they should have had the right to, A, conduct discovery on that, and B, to assert the claim. And so you're basically saying, because at the end of the day, we think they can't win on this claim, they should never have been allowed to assert it. That seems to be pretty backwards of the way procedure works. There are two ways that I can respond to that. First, in explaining the evidence of the record that shows that Mr. Reza used his mark, but turning to your request in particular with what New Yorker knew at the time they filed their answer. First, under Trademark Rule 2.122, the file wrapper of any opposition or registration that is the subject of an opposition or cancellation is automatically of record through no action of either party. Okay. They're not appealing their ab initio claim. Yes. So that's not relevant. Well, it is to the extent that their motion to amend was based on their belief that the invoices and photographs that Mr. Reza submitted did not show trademark use. They had invoices and pictures of Mr. Reza's use. Okay. That claim has not been appealed. It's not before us. The only question before us is whether there was abandonment between 2000 and 2013. Yes. So let's turn to that. What evidence did you present that showed continuous use from 2000 to 2013 in response to their request for information? In two ways, Your Honor. First, in the 2013 cancellation, the file wrapper for Mr. Reza's application, including all of the maintenance filings that included additional evidence of use in 2003 with the Declaration of Continued Use and Incongestibility, as well as in 2007 with the renewal. He submitted evidence of use in each of those periods that automatically became of record. In addition, they had information regarding Mr. Reza's use and his invoices as of during the prosecution of the application, the underlying application, New Yorker's application, when the trademark examining attorney had refused registration based on Mr. Reza's earlier filed registration. During what time period would that be? In 2010. I think what Judge O'Malley is trying to get you to do is to focus on what's after 2000 and before 2013. Yes. What I was trying to suggest is that the entire file wrapper that includes evidence in the I mean, something that's in the... So you have those three periods are only including information that's from 2000 going forward? In 2003 and 2007. So, yes. And all trademark registrants are required to supply evidence of use and sign a Declaration of Continued Use during the 5th and 6th anniversaries and every 10 years. So that evidence was of record automatically in the 2013 cancellation. Turning to the question as to what other evidence shows use. Under the Lanham Act, a mark is deemed to be in use when it is used on any manner on the goods, on containers for the goods, on displays associated with the goods, or tags or labels affixed thereto. Any one of those uses would be sufficient to show trademark use. In this case, Mr. Reza has used his mark in every one of those defined ways under the During what time period? I'm sorry. During what time period? During the entire time period. We showed evidence... How do we know what's dated? We look at all the pictures we see and how do we know what dates those T-shirts were being used in commerce? A number of different ways. There were a few T-shirts that were in fact dated with Mr. Reza's, the time at which he created those designs, in 2000, 2003. In addition, all of the invoices show that there were sales of those goods from the beginning of 1996, every year from that point, as well as pictures that support the initial specimens that were submitted in the underlying application and further corroborate that use, including shipping labels that were attached to the original application were also produced in the 2013 registration that shows there was consistent use in the shipping labels that were affixed to each box of products that were shipped from his store. Any of those uses would be sufficient. You're not arguing that all these hired to create designs had anything to do with putting the mark on clothing, right? They're not mutually exclusive. Where do they show me that the design that was created was the same design that existed before? I'm not following your question. In other words, you've got all these things hired to create an independent design for somebody. I order a T-shirt for my husband's birthday and it's got his name on the front. That doesn't mean you're using your mark on that good. No, but the hang tags that are affixed to each of those goods, as well as tag of neck labels that show his logo on the T-shirts themselves, they all support use, as well as shipping labels that are affixed to the boxes that are mailed from his store for every custom design. Now, any of those uses under the Lanham Act would be sufficient uses to show you. One of the appellant's complaints is that they weren't permitted discovery. The discovery is not available as of right. Is that right? At this point, no, Your Honor. What we would submit is that contrary to Federal Rule of Appellate Procedure 28A, New Yorker did not specifically and distinctly raise the propriety of the board's denial of their motion for discovery. So we would say that that argument is waived. However, even at the time that they filed their motion to dismiss, they had all of the information they needed to assert a claim of abandonment at that point in time, because all of the evidence that was provided simply corroborated the evidence that was already in file record. But this declaration at 333 and 336 that you point to as providing all this evidence, this wasn't even submitted until after all the briefing on the motion to amend was completed. I mean, you didn't submit this in response to the discovery request. No. You submitted this in support of your motion for summary judgment. That's correct. Okay, so you just ignored their discovery request and decided to submit it to the court on your own? That's absolutely not true. So we provided all of the responses to New Yorker's discovery request at the time that the parties agreed for the exchange, which were legally sufficient and proper according to the trademark trial and kill board's manual procedure. But you didn't submit this evidence in response to the discovery request. Well, at the time Mr. Racer filed the summary judgment motion, the only issue at bar was whether or not there was a likelihood of confusion. So Mr. Racer simply provided the declaration to confirm that he owned the registration, had continued using the mark, and that there was a likelihood of confusion between the parties. Because Mr. Racer did not have notice of an abandonment claim through New Yorker's insert, we did not therefore have any reason to submit any further information regarding that. But he had notice of the request for an abandonment claim as it related to the motion to amend. But that was... So you're saying that if you don't assert an abandonment claim in your answer, you can't request discovery that would go to the question of whether a claim had been abandoned. In other words, forget Rule 11, you've got to assert a claim before you ever have a basis for it. No, that's not our position. So they don't assert it in their answer, but they seek it in discovery. You don't have to produce it in discovery because it's not in the answer. That's what you just said. Well, no. What I was trying to suggest was that the first declaration in support of the motion for summary judgment did not speak to abandonment because that wasn't an issue at the time. So the second declaration that was filed in our reply to the summary judgment motion, which New Yorker is complaining about, does include additional information that corroborates all of the evidence that was already made of record. So there's two declarations here, and we're not suggesting that they weren't entitled to request further discovery, but what the board found was that they had all the information they needed and did not make a requirement for a need for further discovery at that time. So it is Mr. Racer's position that New Yorker had all of the information it needed at the time the answer was filed and failed to timely file their motion to amend. In this case, the parties have a long history. They have been corresponding for almost 15 years in the 2000 cancellation. In addition, Mr. Racer's registration has been cited as a bar to New Yorker's applications both in 2000 as well as in 2010. In both cases, counsel had objected to or attempted to overcome the refusals by first in 2000 deleting class 25 books. Then when they refiled their application in 2009 and were again rejected, they argued that Mr. Racer's use of his mark evidenced by specimens that were submitted in the underlying application as well as pages from the website show that Mr. Racer was using his mark in a different way in different channels of trade and with different customers at that time to argue that there was no likelihood of confusion. In that way, we suggest that in 2010, in 2012, when they responded to the examiner's request that they had information regarding Mr. Racer's use and were using it to assert that there was no likelihood of confusion. In addition, although New Yorker complains that there were no meetings or there was no evidence of meetings between the parties, there were in fact discussions in 2000 between the parties. Is that in the record or is this something you're just raising for the first time? It is in the record in the correspondence between counsel in the underlying board proceedings that suggested that there was a request for suspension based on current discussions of the parties. Okay, but the fact that there were ongoing discussions or the facts as to what those discussions were was never presented to the board as a basis to deny the motion for leave to amend. Mr. Racer made allegations of the meetings that took place in 2011 and New Yorker never refuted the fact that meetings actually took place. In fact, admitted that meetings took place, they just didn't admit to the substance of the discussion. So that information was indeed before the board. Information in the form of lawyer argument? Yes. But no evidence as to what occurred in the meetings or the fact of the meetings? No. It's of no consequence. The evidence that there were meetings, if there's no evidence as to what happened at the meetings, then the fact that there were meetings is of no consequence. Right? Can't have any bite at all. Certainly, but as far as the evidence of the record is concerned, New Yorker has shown through a series of actions that they were well aware of what Mr. Racer has done in connection with his youth, including all of the maintenance filings, including the response to the examining attorney's refusal in their application in which they submitted evidence that Mr. Racer had included in his underlying application, which is also an admission that they knew of the evidence that was already a record. All of the documents that were provided in discovery in the 2013 registration, as the board concluded in A5, were substantially the same and included the same material facts and fully corroborated the evidence that was already a record. So in that regard, there is sufficient evidence in the record to show that Mr. Racer has continuously used his mark in connection with each and every way in which the Lanham Act defines the use of a mark and that he has done so consistently since 1996 to the present. The invoices submitted in the underlying application as well as in the discovery clearly show the logo used on the invoices in the upper left corner as well as sales of products. Show me what was submitted in discovery. Point to me in the appendix where you show what was submitted in discovery as opposed to what was submitted in your later declaration. A145 shows pictures of the t-shirts that are screen printed with Mr. Racer's logo. And there are no dates on any of these? There are dates on some of those. But in addition, they are corroborated because they are the same substantive use that was included in the application file wrapper as well as supported by the invoices that evidence sales of his products every year from 1996 to the present. So were the invoices submitted in discovery? Yes. But where are they? The invoices? Yes. They are A126 to A143. And do you say those are tied to those photographs? Yes. As in Westport of Seafood, it is looking at the entire evidence of record. How do we know they're tied? I mean, are they described in the invoice specifically? In some cases, yes. In some cases it does say, show us some. There is the invoice that requests Telluride. One moment while I look for that. I'm looking at page 126, for instance, an invoice for a T-shirt with a logo shown on the invoice. Doesn't the Telluride picture of the T-shirt have a date on it? The Telluride picture does not have a date on it. However, the corresponding invoice does have a date on it. How do we know it connects up to that very Telluride T-shirt? I'm sorry? How do we know the invoice connects up to that very same Telluride T-shirt? Mr. Reza did confirm that the pictures that were shown of the Telluride logo on the T-shirt itself, which had the name Telluride on the T-shirt, was sold in those invoices that were dated, I believe, 2002 and 2006. Just testimony? Testimony, if you were unwilling to look at the date on the invoice and the reference to Telluride and the picture that shows Telluride on the T-shirt. In the record, is there any challenge to the veracity of these invoices? New Yorker does complain that the invoices by themselves do not show trademark use. However, invoices along with pictures of how the mark is used, including shipping labels and hang tags, and pictures of the mark on the tag with neck labels, all show use of the trademark. Do you have shipping labels on the Telluride invoice? I'm sorry? Do you have a shipping label on the Telluride invoice? Well, they would be two different things in the course of regular business. Whereas you'd have the invoice that would be the order of the T-shirts, as well as the box that is sent from Mr. Race's store has shipping labels. And every box has a shipping label that includes Mr. Race's logo. And under the Lanham Act, labels affixed to the goods are sufficient trademark use. We're assuming that labels were attached to the Telluride T-shirts that are then described in the invoice, right? Mr. Race's declaration does say that every box that is shipped from his store includes the shipping label. And to be sure, the shipping label was included in the underlying application in 1996. So your argument is based on all this evidence of use from 2000 going forward, right? Yes. You're saying there's a lot of evidence of use. And his problem is he wants to argue no use, right? That's correct. And so he keeps saying, I need more discovery to get non-use to do what? Disprove what you've already shown is use? Exactly. No more evidence that is already of record would change the result that Mr. Race has continuously used his mark. So what he's looking for are gaps in time. That is what he's hoping for. Because he has in front of him evidence of use. So he knows, well, I can't very well bring an abandonment claim with all this evidence of use unless I find a three-year gap. Yes. So he's looking, hunting for a gap. He is hunting for a gap. Correct. So, for example, in Sorvesteria, there was an eight-year gap where no invoices were provided. And this court had ruled that that was sufficient evidence of abandonment. In this case, there is no year. And we provided invoices from every year between 1996 and when discovery was propounded on Mr. Race that show that his goods were sold every year, evidencing his use of the mark. So there is no New Yorker's claim of abandonment here is futile. And they had all of the information they needed at the time they filed their answer and failed to do so. Any more questions? No. Okay. Thank you, Ms. Patch. Thank you. Mr. Drango, you have four minutes, 40 seconds. Thank you. Thank you, Your Honor. The bottom line is just all you have to do is look at the appendix, pages 126, for the next 36 pages. First of all, these documents were not produced until after we filed our answer. So the board's decision that we did not properly file at the time of the answer is not supported by any evidence whatsoever. So with regard to this specific evidence, these invoices do not show use, as Your Honor pointed out. There is use of fishbone on the top, but that's for a service, not for a trademark. There is no specific evidence on these invoices that shows that someone asked for the fishbone to be added to a T-shirt, that it was essentially added to a T-shirt. There is just no connection of the dots from the invoice to a shipping label to the product itself. So would you concede that even if use of the mark in connection with a service would not qualify, would you concede that if, in fact, it was established that every single one of these things had a hang tag with a mark on it would show use? A hang tag on products itself would be use, yes. But there is no evidence other than a hang tag with no date on it. You're telling us that as a matter of law, putting your trademark on your invoice is not trademark use? Correct, Your Honor. That is evidence of service mark use. Specifically, trademark use is actually use of the mark on a product itself or tagged labels or packaging. No, in association. Yes. Not attached to. Supposing you have an elaborate designer garment. You say you have to put holes in it in order to attach the trademark of the designer? Tags, labels, or packaging. We've been told that the packaging bears the trademark. The record is full of invoices bearing the trademark. And you're telling us that there was no use? Not even prima facie? Is there any contrary evidence? I believe there is not evidence of consecutive use over any period of time. Again, these invoices do not actually show use of the mark. I don't see it anywhere. There's no connection between the sale of this t-shirt and invoice 12-104 with any specific t-shirt itself that bore the trademark. Well, if your client is unaware of any evidence of continuing use in a three-year period, what's to stop you from filing a counterclaim with an abandonment? I mean, your position is that you shouldn't have filed this counterclaim earlier because you didn't know it, right? Right. Well, you look at the record and you see no evidence of use. You look at all this stuff that your arbitrator tells you is on the record, and you look at it and say, that doesn't show any use to me. It just shows a bunch of pictures of t-shirts and a bunch of pictures of labels, and that isn't enough, so I'm going to file a counterclaim of non-use. Well, that's exactly what we did, Your Honor. We waited until we actually were handed over documents and discovery. We followed up with them to say, okay, is this everything there is? Are you supplementing your discovery? Can you piece together? As of the time you filed your answer, you had a record in front of you at that point in time. We did not. There was no record. Previous proceedings and whatnot. What's that? So what you're saying is that by now, at the sort of last minute, throwing everything out in the case except from 2000 going forward, you're going to get the benefit because you didn't get some discovery for that period. Correct. The only way to show abandonment is not even through three years of consecutive use. If you, for a minute of time, abandon a trademark and don't have an intent to use it, then you abandon your trademark. I'm entitled to prove that also. He may have closed his store for a period of time and decided he wasn't going to go ahead. That's very strange. Even though two minutes later, you use it? Absolutely. The claim of abandonment is based on an intent to abandon. If you have an intent to abandon and actually abandon, then you abandon. That's the law. Yes, and actually abandon. And if you don't abandon, then what? If you don't abandon, then your rights continue and you have continuous use of a trademark. But again, what happens is, and why we are prejudiced in this case is because at any point in time, if Mr. Rochka abandoned his rights, then he can no longer support. But you have no evidence? You provided no evidence of intent to abandon and actual abandonment? Because I'm unaware of it at this point because we haven't been able to get through the discovery to ask Mr. Rochka about what happened during that entire 13-year period of time. We don't have any evidence of consistent use other than one invoice per year that, again, we claim is not evidence of trademark use. So we're entitled to the discovery to determine that. As a matter of statute, as a matter of administrative practice, as a matter of statute, you require permission to take discovery. Is that correct? Correct. And so what sort of showing in your theory do you need to make in order to obtain such permission? I'm not following. Sorry. You had to request permission for discovery. Right. We put in our request for discovery. So you say, I'd like discovery, please. Right. Very truly yours. Your theory is that that's adequate? Well, it's adequate for them to make – we made the request. As part of our request, we had questions asking about continuous use. How are you using the mark on the actual goods? How are you using the mark on the goods? Are you using it consistently? So on and so forth. These questions were not properly answered. We went back and we asked for supplemental responses. In some cases, we were given them. In most cases, we weren't. And then, as you can see, at the end of the process, there's a seven-page declaration giving information that we asked for the entire time during discovery. We were at a disadvantage. They knew what we wanted. They knew this was information, and it was probably responsive to the discovery request. But we didn't get that information during discovery at all. And based on that, we waited until the end of discovery to say, listen, this is all we're getting. They haven't shown use based on our request for documents to support the use. At this point, we have an abandonment claim. And no one's prejudiced at this point because there was a motion of summary judgment in the case. So essentially, the case was suspended for all intents and purposes. There were six months left in discovery before, at the time when they filed the summary judgment motion. And even after the summary judgment motion was denied, was granted for class 25, the board actually opened up the case again and extended discovery again. So we would have been entitled to additional discovery at that point anyway because there were five other classes of goods that were involved in the case. So there's no prejudice, and it just was an abuse of discretion for the judge to consider evidence from a 1996 invoice alone to deny our motion to amend. OK. Any more questions? Any more questions? Thank you. Thanks, counsel. The case is taken under submission. That concludes the argument cases on the calendar for this morning. All rise. The honorable court is adjourned until tomorrow morning at 10 o'clock AM. Thank you.